UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| FREDERICK D. AKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11-cv-298-CAN |
| | ) | |
| MIDWEST LOGISTICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

On July 29, 2011, Plaintiff, Frederick D. Akins ("Akins"), filed a complaint against his employer, Defendant Midwest Logistics, Inc. ("Midwest") alleging race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.*, for a truck assignment issue on May 28, 2010. On August 24, 2012, Akins filed a second complaint against Midwest alleging retaliation under Title VII for his termination on May 26, 2011. Akins alleged that his termination was in retaliation for filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the truck assignment issue at the heart of the first case. As a result, the Court consolidated these cases on May 29, 2013. On that same date, the parties consented to have this consolidated case adjudicated by the undersigned.

Now before the Court is Midwest's motion for summary judgment filed on December 23, 2013. Akins filed his response on September 2, 2014. The motion became ripe on September 15, 2014, when Midwest Logistics filed its reply brief.[1] On October 28, 2014, the Court held

---

[1]Midwest's reply brief is 23 pages long. Doc. No. 43. Midwest did not seek the Court's permission to file this oversized brief. *See* N.D. Ind. L.R. 7-1(e)(1) (limiting reply briefs to 15 pages). Therefore, the Court has

oral argument on Midwest's motion for summary judgment. The Court issues the following opinion pursuant to the consent of the parties and 28 U.S.C. § 636(c). Before proceeding to address Midwest's motion for summary judgment, however, the Court must address the matter of whether Staffing Services, Inc. ("Staffing Services") is a party to this action.

## I. STATUS OF STAFFING SERVICES AS A DEFENDANT

On August 14, 2013, this Court granted Akins' motion for joinder of Staff Services as a defendant without any objection from Midwest. However, Akins failed to provide a summons to the Clerk or to serve the summons on Staffing Services. Moreover, no counsel has entered an appearance for Staffing Services.

On September 22, 2014, this Court ordered Akins to show cause why this action should not be dismissed against Staffing Services for failure to accomplish service in the time allotted under Fed. R. Civ. P. 4(m). Akins timely responded on September 30, 2014. The Court also discussed this issue with counsel at oral argument where Akins' attorney, Bessie Davis, acknowledged that service on Staffing Services had inadvertently not been secured and that Akins' prosecution of this case would have proceeded exactly the same had Staffing Services been served. At the hearing, Midwest's counsel, John Halstead, agreed that Staffing Services and Midwest Logistics are sister corporations, both of which are now in the midst of administrative dissolution. In addition, Halstead acknowledged that the officers and owners of both corporations are the same individuals and that he would also represent Staffing Services if it were served. Given the interconnection of the two companies and the lack of evidence of prejudice for any party if Staffing Services was joined at this point in the litigation, the Court

considered only the first 15 pages of Midwest's reply brief.

discussed the possibility of having Staffing Services waive service, after which it could file an answer and proceed as a defendant in this action. Halstead agreed that waiver would be the most expeditious method to address the service issue raised here, but could not commit without consulting his client.

Therefore, the Court **AFFORDS** Staffing Services until **November 21, 2014**, to file a status report informing the Court whether it intends to waive service. If Staffing Services does waive service, its answer to Akins' complaint will be due on **December 12, 2014**. If Staffing Services refuses to waive service, Fed. R. Civ. P. 4(m), which allows plaintiffs 120 days after the complaint is filed to serve a defendant, will dictate the Court's response. Rule 4(m) provides that when a plaintiff fails to meet the 120-day deadline, "the court . . . on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Because more than 120 days has passed since this Court granted Akins' request to join Staffing Services as a defendant and service has not been secured, this Court would be forced to dismiss Staffing Services without prejudice if it chooses not to waive service.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Relevant Background

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

Defendant, Midwest Logistics, located in North Liberty, Indiana, is a company that contracted with other companies to transport freight. One of Midwest's customers was AM

General, which built Humvees.  AM General relied on Midwest to shuttle parts between its Logistics Operations Center in South Bend and its McKinley Plant in Mishawaka.

Staffing Services leases drivers to Midwest.  Akins, an African-American, was employed by Staffing Services and worked as an AM General shuttle driver for Midwest from July 2006 through May 25, 2011.  Shuttle drivers were assigned the task of running parts between AM General's Mishawaka and South Bend facilities.  Midwest also used drivers to make "local" runs, which included servicing other customers in nearby areas such as Merrillville and Michigan City.  Local drivers were assigned to newer vehicles in the Midwest fleet because they were driving farther and Midwest wanted them to be in more dependable vehicles.  All drivers maintained daily logs of their activities, destinations, time, and mileage called City Man Daily Worksheets ("the daily log").

While working for Midwest, Akins' primary responsibility was making shuttle runs for AM General.  When Akins' AM General work was completed on any given day, however, Midwest sometimes directed Akins to make local runs.  In May 2010, Akins was assigned to the oldest and least dependable—arguably the worst—vehicle in Midwest's fleet to complete his daily runs.  Having learned that another driver was given his preferred work schedule because of his seniority, Akins assumed that truck assignments were also based on seniority.  He then complained to Midwest about being assigned the worst truck in the fleet and asked that he be assigned to a newer truck then assigned to another shuttle/local driver, Steve Gorsuch, who was Caucasian, because Akins had more seniority than Gorsuch.  Midwest refused to reassign Akins to Gorsuch's truck.

Akins alleges that his truck reassignment request was denied because of his race.  Yet,

Akins admits that no Midwest employee told him he was denied the vehicle because of his race. In addition, Akins acknowledges that no one at Midwest ever made comments to him about his or another person's race. Akins also agreed that his Midwest supervisors told him that the company treated everyone equally. Moreover, Akins knew of no instance where the other two African-American Midwest employees or the single Hispanic driver at Midwest were treated unfairly because of their race. Even so, Akins filed a Charge of Discrimination with the EEOC on December 29, 2010, alleging that Midwest discriminated against him by denying his vehicle request. On April 29, 2011, Akins' received a right-to-sue letter from the EEOC after it dismissed his claim.

  Almost a month later on May 25, 2011, Mark Ellam, Logistics Manager at AM General, contacted Midwest's Logistics Operations Manager and one of Akins' supervisors, Pete Cicero, by telephone complaining that a Midwest driver was sleeping in his truck, which was parked in Dock 3 at the McKinley plant while the truck was being loaded. Ellam expressed concern because of an AM General policy requiring drivers to remain outside their trucks in a designated area while their trucks were being loaded at Dock 3. The policy addressed safety concerns that had arisen when a another driver remained in his truck. In addition, Ellam noted that he did not want to be paying for drivers who were sleeping on the job. While Ellam could not identify the allegedly sleeping driver because he had not observed the incident himself, Cicero reassured him that it was one of two drivers[2] and that he would take care of it. Later that day, Randy Scamehorn, Midwest's General Manager and Staffing Services' human resource officer, asked

---

[2] The daily logs place Akins and Caucasian driver, Richard Knowlton, in the vicinity of Dock 3 on May 25, 2011, at the time in question. Richard Knowlton was not questioned or disciplined about the alleged sleeping incident.

Ellam to provide a written complaint regarding the incident, which he did via email around 9:45 p.m. that night. Ellam's email identified the truck involved by its truck number: 207201, which only Akins had driven that day according to his daily log.

The next morning, Akins was told that he was terminated for sleeping on the job. Even Akins admits, sleeping on the job was a terminable offense. His termination letter, prepared by Scamehorn on Staffing Services letterhead, stated:

> Today you were waiting to get unloaded in dock #3 at AM General McKinely in Mishawaka. The AM General dock supervisor reported that he had to go out and wake you up. This was after the security guards attempted to wake you up. AM General McKinely does not allow the driver to remain in the tractor while unloading.

Doc. No. 26-2 at 44. The letter also referenced a previous write-up from December 2008 when Akins was for disciplined for theft and dishonesty. The 2008 write-up described Akins' habit at that time of arriving late for his shift, leaving without permission in the middle of the day, and falsifying his time cards. There is no evidence of other disciplinary issues in the record.

Akins filed a second EEOC Charge on April 13, 2012, alleging that he was terminated in retaliation for filing the EEOC Charge of Discrimination regarding his truck assignment. The EEOC sent Akins a right-to-sue letter dated June 1, 2012, having dismissed his charge. Midwest Logistics now seeks summary judgment on Akins' consolidated claims of race discrimination and retaliation.

  **B. Analysis**

    **1. Summary Judgment Standard of Review**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Healy v. City of Chicago*, 450 F3d 732, 738 (7th Cir. 2006).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted).

### 2. Akins' racial discrimination claim fails.

Akins contends that Midwest engaged in unlawful race discrimination in violation of Title VII when it refused to reassign him the newer vehicle that his Caucasian co-worker, Steve Gorsuch, was driving despite Akins' seniority. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish his claim of disparate treatment based on race under Title VII, Akins may proceed "using either the direct method to show that racial discrimination motivated the employment decision, or by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Nichols v. S. Ill. Univ. Edwardsville*, 510 F.3d 772, 779 (7th Cir. 2008) ("*Nichols v SIUE*"). Akins proceeds using both methods.

### a. Direct Method

Using the direct method, a Title VII plaintiff must provide direct or circumstantial evidence of intentional discrimination. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 603 (7th Cir. 2014) ("*Nichols v. MCPPD*"). In other words, evidence of discriminatory intent may include "an outright admission by the decisionmaker that the challenged action was undertaken because of the [employee's] race [or] a convincing mosaic of circumstantial evidence . . . that points directly to a discriminatory reason for the employer's action." *Davis v. Con-Way Trans. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004). Even if a plaintiff succeeds in providing the necessary evidence of discriminatory intent, he cannot survive summary judgment if he fails to provide evidence to support all elements of the claim. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). As a result, Akins must also demonstrate that a materially adverse employment action resulted from the alleged discrimination to defeat Midwest's motion for summary judgment. *Id.* (citing *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). This is where Akins admittedly fails.

A materially adverse employment action materially alters the terms and conditions of

8

employment. *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). It is "something more disruptive than a mere inconvenience or an alternation of job responsibilities." *Nichols v. SIUE*, 510 F.3d at 780 (quotations omitted). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). Categories of actionable, materially adverse employment actions include:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination;
>
> (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and
>
> (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Nichols v. SIUE*, 510 F.3d at 780 (7th Cir. 2007) (quoting *O'Neal*, 392 F.3d at 911). However, a lateral transfer that does not involve a demotion, in form or substance, or a reduction in pay combined with something more than minor changes in working conditions does not constitute an actionable adverse employment action. *Id.* (internal citations omitted).

Despite suggesting at oral argument that Midwest's refusal to reassign him to a newer vehicle changed the quality of his work conditions, Akins' counsel conceded that assigning Akins to the worst vehicle in the fleet did not constitute a materially adverse employment action according to case law. Akins' counsel further agreed that the vehicle reassignment was not an adverse employment action even if Midwest had made the assignment based on Akins' race. Having conceded one of the elements of a racial discrimination claim under Title VII, Akins

9

cannot succeed on his racial discrimination claim. As a result, Akins' race discrimination claim fails using the direct method of proof because he has not provided evidence to support all the elements of the discrimination claim.

### b. Indirect Method

To prove discrimination based on race using the *McDonnell Douglas* indirect, burden-shifting method, a plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Smiley v. Columbia Coll. Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013). To establish a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected classes were treated more favorably. *Id.* Once a *prima facie* case is established, the burden shifts to the defendant employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant employer does so, the burden shifts back to the plaintiff, who must present sufficient evidence that the proffered reason was pretextual. *Id.* "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

In Akins' case, no party disputes that he, as an African-American, is a member of a protected class. As already discussed, however, Akins has failed to establish that Midwest's refusal to reassign him to Gorsuch's truck was an adverse employment action. Therefore, Akins cannot establish the necessary *prima facie* case of discrimination, even if Akins was meeting

Midwest's expectations and Midwest was treating similarly situated but unprotected individuals more favorably than Akins. As a result, Akins cannot survive summary judgment on his discrimination claim using the indirect method either.

### 3. Genuine disputes of material fact exist as to Akins' retaliation claim.

Akins' retaliation claim, alleging that Midwest terminated him because he filed a Title VII Charge of Discrimination with the EEOC in connection with the truck assignment issue, cannot be resolved so easily. Title VII prohibits an employer's retaliation against an employee because he " . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a Title VII retaliation claim, a plaintiff may proceed using either the direct method or the indirect method.

To establish retaliation under the direct method, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). There is no dispute that Akins engaged in protected activity when he filed the EEOC Charge regarding the truck assignment issue. And here, the parties agree that Akins' termination constitutes an adverse employment action. However, the parties dispute whether Akins' EEOC Charge was the cause of his termination.

To establish causation, Akins must establish that his EEOC Charge was a "substantial or motivating factor" in Midwest's decision to terminate his employment. *See id.* at 860 (citing *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008)). To do this, a plaintiff may

establish the causation element by presenting a convincing "mosaic of circumstantial evidence" that would create the inference of retaliatory intent without an actual employer admission. *See Coleman*, 667 F.3d at 860 (quoting *Rhodes*, 359 F.3d at 504). Convincing circumstantial evidence may take the form of "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Id.* (citations omitted) "[E]vidence that similarly situated employees were treated differently" may also be convincing. *Id.* (citations omitted). Another type of potentially convincing evidence would be "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (citations omitted).

In this case, Akins has presented disputes of fact, that if resolved in his favor, could lead a reasonable jury to infer the retaliatory intent necessary to prevail on his retaliation claim. First, Akins points to testimony from Ellam reporting a statement by Midwest's Scamehorn that could be interpreted as an admission of retaliatory intent. In his deposition, Ellam testified about a 2013 conversation he had with Scamehorn in which Ellam asked Scamhorn why Akins was no longer working for Midwest. Ellam testified that he asked Scamehorn: "What is this all about?" and Scamehorn responded: "Fred Akins is filing a lawsuit against us [Midwest] because we wrongfully terminated him." Doc. No. 42-2 at 406.

Importantly, Midwest does not deny that Scamehorn made the statement. The big question, however, is whether Ellam's testimony as to Scamehorn's statement, arguably hearsay, is admissible. At oral argument, Akins' counsel argued that the statement was admissible as a statement against interest by Scamehorn, a Midwest agent. Midwest's counsel was nonplussed by the prospect that Ellam's testimony could be admissible. He argued that even if Ellam's

12

testimony about Scamehorn's statement were admissible, the statement could not be considered an admission of retaliatory intent based on the context of the Ellam-Scamehorn conversation. Assuming without deciding, in the light most favorable to Akins as the non-movant, that Ellam's testimony would be admissible, there is clearly a dispute as to the meaning of Scamehorn's statement.

Second, Akins notes the fact that he was terminated on May 26, 2011, less than 30 days after he received his right-to-sue letter dated April 29, 2011, from the EEOC. Admittedly, suspicious timing alone is not sufficient to create an inference of retaliation. *O'Leary*, 657 F.3d at 635*; Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Akins, however, does not rely solely on suspicious timing.

Third, Akins has presented factual disputes about the unusual chain of events surrounding Ellam's complaint about a sleeping driver and Midwest's alleged rationale for terminating him that could lead a reasonable jury to find Midwest's reason for terminating Akins was pretextual. In order to show that an employer, like Midwest, is asserting a pretextual reason for an adverse employment action, "the plaintiff must present evidence that the employer is dissembling." *O'Leary*, 657 F.3d at 635. When the employer cites job performance as a reason for the adverse action, "the plaintiff must do more than dispute the validity of the employer's criticisms." *Id.* As a result, the Court is unconcerned with whether the employer misinterpreted the facts surrounding the employee's poor job performance or if the stated reason for the adverse action was inaccurate or unfair in any way. *Id.* The question is whether the employer believed the reason it offered for the adverse action or whether that stated reason was a lie. *Id.* It is not the Court's role "to question the wisdom of a company's decisions on how to run its business,

only to assure that such decisions are not intended to provide cover for illegal discrimination." *Johal v. Little Lady Foods, Inc.,* 434 F.3d 943, 946–47 (7th Cir.2006).

Here, Midwest stated that it had terminated Akins because of job performance issues. Specifically, Midwest cited to its belief that Akins had been sleeping on the job in violation of AM General's policies on May 25, 2011. Midwest also noted Akins' timeliness issues addressed in the December 2008 write-up. *See* Doc. No. 42-2 at 444. Akins, however, vehemently opposes Midwest's assertion that he was sleeping in his truck. In the end, whether Akins was sleeping or not may not matter if Midwest truly believed that he had been sleeping when they fired him. The question here is what Midwest believed. And Akins has produced facts, which taken in the light most favorable to him, demonstrate that the circumstances surrounding the report of a sleeping driver to Midwest and the identification of Akins as the sleeping driver was unusual.

For instance, Akins suggests that Midwest usually did not require a written complaint from AM General regarding alleged misconduct by drivers. Yet in this case, Scamehorn contacted Ellam more than once on the day in question seeking just such a written complaint, which Ellam produced via email around 9:45 p.m. In addition, evidence relied upon by Midwest indicates that security guards reported the sleeping driver to Ellam who then reported the situation to Cicero at Midwest by phone. Yet Akins cites evidence that dock supervisors, not security guards, would have been responsible for reporting sleeping drivers to Ellam. Moreover, Akins references the testimony of two dock supervisors, on duty at Dock 3 on the day of the alleged sleeping incident, who claimed they never saw any sleeping drivers and consequently never reported any such incident to Ellam.

Furthermore, Akins argues that summary judgment would be premature given the parties' inability to secure testimony from Pete Cicero, the Midwest supervisor who not only took the original complaint from Ellam but also allegedly identified Akins as the aleeping driver and directed Scamehorn to prepare the termination letter.[3] Of particular concern to Akins is Cicero's initial statement to Ellam on the phone that the alleged sleeping driver had to be one of two people. Yet the record includes no evidence to suggest that both drivers were investigated.

Additionally, Akins notes that other sleeping drivers were not terminated, or even disciplined. Similarly, Akins challenges Midwest's reliance on his 2008 write-up for timeliness issues as part of the rationale for his termination, especially when (1) Akins had no disciplinary issues in the 2-1/2 years between the 2008 write-up and his termination, and (2) other drivers regularly left work early without working a full eight-hour shift without being disciplined like Akinis was. No doubt, Midwest disputes Akins' interpretation of these facts. In doing so, however, Midwest only confirms that a genuine dispute of material fact as to pretext exists. Accepting that Akins' version of the facts, supported by Akins' testimony and that of the AM General employees as well as other Midwest employees, as true for purposes of summary judgment, the Court is left with a serious question as to whether Midwest somehow concocted the sleeping incident to create an arguably legitimate reason for firing Akins. In other words, Akins has presented sufficient facts from which a reasonable jury could find that Midwest's stated reason for terminating Akins was only pretext for its potentially retaliatory intent.

While none of the individual factual disputes discussed above may be sufficient alone to

---

[3]At oral argument, counsel for both parties indicated that they had subpoenaed Pete Cicero for a deposition, but that he failed to appear. Midwest's counsel stated that Cicero was not under Midwest's control now that the company was defunct. Akins' counsel noted that she would subpoena Cicero to testify at trial.

15

overcome summary judgment, all of them combined do create a mosaic of circumstantial evidence from which a reasonable jury could infer a causal connection between Akins' EEOC Charge and his termination. The combination of Scamehorn's possible admission of wrongful termination, the timing of Akins' termination so close to the dismissal of his EEOC claim, the unusual course of events surrounding the sleeping driver incident, and the evidence showing disparate treatment of similarly-situated employees are disputes that only a fact-finder may resolve these disputes. The Court cannot reach any conclusion of law without resolution of those facts. Therefore, the Court must deny Midwest's motion for summary judgment as to the retaliation claim.

### III.    CONCLUSION

First, because Akins failed to perfect service on Staffing Services, Inc. as required under Fed. R. Civ. P. 4(m), the Court now **AFFORDS** Staffing Services until **November 21, 2014**, to file a status report informing the Court whether it intends to waive service. If Staffing Services does waive service, its answer to Akins' complaint will be due on **December 12, 2014**. If Staffing Services refuses to waive service, this Court would be forced to dismiss Staffing Services without prejudice pursuant to Rule 4(m).

Second, because Akins has failed to establish that Akins' vehicle assignment was not an adverse employment action, the Court **GRANTS** Midwest's motion for summary judgment as to Akins' discrimination claim. [Doc. No. 26]. The Clerk is **INSTRUCTED** to enter judgment for Midwest on Akins' discrimination claim.

Third, because genuine disputes of material fact exist, the Court must **DENY** Midwest's motion for summary judgment as to Akins' retaliation claim. [Doc. No. 26].

Lastly, this consolidated case is now set for a telephonic scheduling conference to select a trial date on **December 18, 2014 at 11:00 a.m. (E.S.T.)**. The Court will call all counsel listed on the docket sheet unless it is notified that specified attorneys need not be contacted. If, at the time of the scheduled conference, you will not be at the telephone number identified on the docket sheet, notify court staff at (574) 246-8100 of the number at which you can be reached.

**SO ORDERED.**

Dated this 13th Day of November, 2014.

 S//Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge
